# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1284

ESTATE OF JUSTIN PAUL SMITH; CHRISTINA A. SMITH, individually and as wife and co-administratrix of the Estate of Justin Paul Smith; GIANNA SMITH, individually and as daughter and co-administratrix of the Estate of Justin Paul Smith; LISA GAVIN, on behalf of her minor son, J.S.,
Appellants

v.

CITY OF PHILADELPHIA; OFFICER CURT MCKEE

_____

Appeal from U.S. District Court, E.D. Pa.
Judge Michael M. Baylson, No. 2:21-cv-04395

Before: KRAUSE, MASCOTT, and FISHER, *Circuit Judges*
Submitted Mar. 12, 2026;

Decided Apr. 23, 2026
_____

NONPRECEDENTIAL OPINION[*]

KRAUSE, *Circuit Judge*.  The Estate of Justin Paul Smith and certain family members (the Estate) appeal the District Court's grant of summary judgment to Officer Curt McKee of the Philadelphia Police Department, who shot and killed Smith when responding to a 911 call.  Because we conclude that the District Court did not err in determining that there were no genuine disputes of material fact regarding the Estate's excessive-force claim and

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

that, in light of the undisputed facts, McKee's use of force was objectively reasonable, we will affirm.[1]

## I. DISCUSSION[2]

When confronted with a potentially dangerous suspect, an officer may not use deadly force without good reason "to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985). We must make that assessment "from the perspective of a reasonable officer on the scene," *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011), keeping in mind that officers "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Against that legal standard, McKee's use of force was reasonable under the circumstances. As reflected in McKee's statement of material facts,[3] McKee, in his pursuit of Smith, encountered a distressed resident yelling at Smith to "get out of [her] house," as a child cried in the background. App. 116, ¶ 10. McKee thus was confronted with an

---

[1] Appellants do not challenge the District Court's entry of summary judgment on their other claims, including a *Monell* claim, a state-created danger claim, and state-law claims for assault and battery. *See Est. of Smith v. City of Philadelphia*, No. 21-cv-4395, 2025 WL 220038, at *4-5 (E.D. Pa. Jan. 16, 2025).

[2] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo. *See CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 320 (3d Cir. 2025).

[3] Appellants contest this and other aspects of McKee's statement of material facts with the assertion that certain statements cannot be clearly heard on the bodyworn camera footage. These generic assertions do not suffice to raise a genuine dispute, especially in light of this Court's review of the bodyworn camera footage. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

individual who had forced his way into a home where a resident and young children were present. When McKee found Smith in the kitchen, Smith repeatedly failed to obey McKee's lawful orders to show his hands, which were behind his back, instead yelling and moving toward McKee. At that point, McKee reasonably opted for non-lethal force and attempted to deploy his taser, which malfunctioned. Only when McKee saw Smith grab a knife from the kitchen counter and lunge toward him did he use lethal force, shooting Smith a single time.

True, it is not definitively established whether Smith in fact possessed a knife. But that factual dispute is not material to the outcome of this case, and, like the District Court, we need not resolve it. *See Est. of Smith v. City of Philadelphia*, No. 21-cv-4395, 2025 WL 220038, at *3 (E.D. Pa. Jan. 16, 2025). Instead, what matters is whether, once McKee believed Smith had grabbed a knife, his actions were reasonable. After all, "an officer who uses deadly force in the mistaken belief that a suspect is armed will be forgiven so long as the mistake is reasonable and the circumstances otherwise justify the use of such force." *Lamont*, 637 F.3d at 183 (citing *Graham*, 490 U.S. at 396).

Here, facing a perceived deadly threat, McKee acted reasonably to protect himself and the residents of the home. Analyzing the relevant factors, including "whether the suspect poses an imminent threat to the safety of the police or others in the vicinity," *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Graham*, 490 U.S. at 396), it was reasonable for McKee to shoot a non-compliant individual whom he believed to be armed and who was charging at him from a few feet away. *See, e.g.*, *Garner*, 471 U.S. at 3 (permitting an officer to use deadly force if he "has probable cause to believe that the

3

suspect poses a significant threat of death or serious physical injury to the officer or others"); *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) (holding that "deadly force was justified" where a woman charged officers with a knife). In short, the District Court correctly determined that "Smith's refusal to comply with McKee's commands and his movement towards McKee provided probable cause to believe that Smith posed a significant threat of death or serious physical injury, regardless of whether Smith was armed with a knife." App. 8.

Nonetheless, we must be mindful that, because Smith was "the victim of deadly force[,] [he] is unable to testify"—testimony that might otherwise have introduced a material factual dispute. *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). For this reason, we have noted that "courts should be cautious on summary judgment to 'ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify.'" *Id.* Specifically, we "must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational fact finder that the officer acted unreasonably." *Id.*

Here, the circumstantial evidence supports McKee's testimony that he perceived that Smith had a knife. The resident confirmed that she also saw Smith holding a knife. And a knife was recovered from the scene near the kitchen, with overwhelming evidence of Smith's DNA on it. So, other evidence does not call into question McKee's testimony that he believed Smith had a knife, and a rational factfinder could not determine that he acted unreasonably.

4

Appellants counter that, if McKee had "used his taser instead of his gun," he would not have had to use lethal force, and "Smith would have survived," Opening Br. 3, but they offer no authority to support a theory of excessive force so expansive as to fault McKee for a failed taser deployment. And even if the taser malfunctioned due to McKee's negligence—a theory the record does not support—the District Court could not impose constitutional liability based on mere negligence. *See County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998).

Nor does the record support Appellants' theory that McKee is liable because he failed to "adequately retreat[ ]." Opening Br. 8. To the contrary, the bodyworn camera footage shows McKee backing up before he dropped the taser and discharged his firearm. In any case, when confronted with a split-second, life-or-death decision, Officer McKee was neither obligated to retreat nor required to exhaust every possible way to defuse the situation. *See Sheehan*, 575 U.S. at 612. Given the "tense, uncertain, and rapidly evolving" nature of a deadly confrontation, we will not "Monday morning quarterback[]" McKee's decision to use lethal force.[4] *Lamont*, 637 F.3d at 183.

## II. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.

---

[4] Like the District Court, we conclude that McKee's use of force was reasonable and therefore need not address Appellants' arguments against qualified immunity. *See Est. of Smith*, 2025 WL 220038, at *3 n.9. Appellants' arguments about their "claims" under 42 Pa. Cons. Stat. §§ 8301, 8302 are similarly misplaced. *See* Opening Br. 11. Those wrongful-death and survival-action provisions, respectively, are merely procedural vehicles to recover damages, not substantive causes of action. *See Johnson v. City of Philadelphia*, 837 F.3d 343, 354 n.58 (3d Cir. 2016).